RICHARD CAMPBELL,

Plaintiff,

v.

CIVIL ACTION NO.: CV208-094

MICHAEL J. ASTRUE, Commissioner
of Social Security

Defendant.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff contests the decision of the Commissioner to terminate his Disability Insurance Benefits. Plaintiff urges the Court to reverse the Commissioner's decision and enter an award finding Plaintiff disabled, or, in the alternative, to remand this case for further consideration of the evidence. Defendant asserts that the Commissioner's decision should be affirmed.

Plaintiff was found disabled as of July 22, 1999, in a decision dated June 24, 2000, as the result of residuals from prior right knee reconstructive surgery for ACL tear; right leg compartment syndrome; right peroneal nerve palsy/paralysis with severe motor loss; right rotator cuff tear times two, status post reduction surgery; and degenerative disc disease of the lumbar spine with L4-5 loss of disc space heights and osteophytes. (Tr. at 17, 57). It was determined that Plaintiff was no longer disabled as of April 1, 2005. Plaintiff filed a timely request for a hearing after this determination was upheld upon reconsideration. A hearing was held on June 19, 2007, and continued on March

4, 2008, by Administrative Law Judge Robert O. Foerster ("ALJ" or "ALJ Foerster") at which Plaintiff appeared and testified. On March 4, 2008, ALJ Foerster held a supplemental video hearing. The ALJ presided over the hearing from Savannah, Georgia, and Plaintiff appeared in Brunswick, Georgia. G. Mark Leaptrot, a vocational expert, also testified at this hearing. (Tr. at 17). The ALJ determined that Plaintiff's disability ended on April 1, 2005. (Tr. at 24). The Appeals Council denied Plaintiff's request for review and the ALJ's decision became the final decision of the Commissioner for judicial review. (Tr. at 3-5).

Plaintiff, born on December 22, 1962, was forty-five (45) years old when ALJ Foerster issued his decision. (Tr. at 437). He has a tenth grade education, but allegedly attended special education classes. (Tr. at 444). His past relevant work experience includes employment as a forklift operator, general laborer, and construction worker. (Tr. at 23).

## ALJ'S FINDINGS

If a person is entitled to disability benefits, the Commissioner is required to conduct a periodic review to determine whether those benefits should continue. 20 C.F.R. § 404.1594(a). The benefits cease if there has been medical improvement related to the claimant's ability to work. Id. Medical improvement is defined as "any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled." 20 C.F.R. § 404.1594(b)(1). A decrease in severity determination must be based on improvements in the claimant's symptoms, signs or laboratory findings. Id.

The Social Security regulations provide an eight-step sequential evaluation process for determining whether a claimant's disability continues. 20 C.F.R. § 404.1594(f). The first step determines if the claimant is engaged in "substantial gainful activity." If the claimant is performing substantial gainful activity and any applicable trial work period has been completed, the claimant is no longer disabled. 20 C.F.R. § 404.1594(f)(1). If the claimant is not engaged in such activity, it must be determined at the second step whether the claimant's severe impairment meets or equals the severity of a listed impairment. If the claimant's condition meets or equals the level of severity of a listed impairment, the claimant's disability continues. 20 C.F.R. § 404.1594(f)(2). If not, the examiner proceeds to the third step, namely, an assessment of whether there has been medical improvement in the claimant's condition. 20 C.F.R. § 404.1594(f)(3). The analysis proceeds to the fourth step if medical improvement has occurred or the fifth step if medical improvement has not occurred. It must be determined at the fourth step if the medical improvement is related to the ability to do work. If the medical improvement results in an increase in the claimant's ability to perform basic work activities, the analysis proceeds to the sixth step. 20 C.F.R. § 404.1594(f)(4). At step five, the examiner determines whether any exceptions listed in 20 C.F.R. § 404.1594(d) and (e) apply. 20 C.F.R. § 404.1594(f)(5). There are two groups of exceptions and the analysis proceeds to step six if one of the first group of exceptions applies. The claimant's disability ends if an exception in the second group applies. If no exceptions apply, the claimant's disability continues. At the sixth step, if there has been medical improvement, it must be determined whether the claimant has a severe impairment or combination of impairments. 20 C.F.R. § 404.1594(f)(6). The claimant is no longer

AO 72A
(Rev. 8/82)

3

disabled if all current impairments in combination do not significantly limit the claimant's ability to do basic work activities. The analysis proceeds to the seventh step if the claimant's current impairments limit his or her ability to do work. The examiner must assess the claimant's residual functional capacity and determine whether he or she can perform past relevant work at step seven. 20 C.F.R. § 404.1594(f)(7). If the claimant has the ability to perform past relevant work, he or she is no longer disabled. The analysis proceeds to the last step if the claimant cannot perform past relevant work. At step eight, the examiner must determine whether, in light of the claimant's residual functional capacity, age, education and work experience, the claimant can perform other work. Disability benefits will continue only if the claimant is unable to perform other work. 20 C.F.R. § 404.1594(f)(8).

In the instant case, the ALJ followed the sequential process to determine that Plaintiff had not engaged in substantial gainful employment. At Step Two, the ALJ determined that since April 1, 2005, Plaintiff did not have an impairment or combination of impairments that meets or medically equals a listed impairment. The ALJ further determined, at Step Three, that medical improvement had occurred. (Tr. at 19). At Step Four, the ALJ determined that Plaintiff's medical improvement was related to the ability to do work because it resulted in an increase in his residual functional capacity. The ALJ found, at Step Six, that Plaintiff continued to have a severe impairment or combination of impairments that limited his ability to perform basic work activities. At Step Seven, the ALJ found that Plaintiff was unable to perform past relevant work. (Tr. at 23). However, the ALJ determined, at Step Eight, that Plaintiff was not disabled

because he was able to perform a significant number of jobs that exist in the national economy. (Tr. at 24).

## ISSUES PRESENTED

The issues presented in this review are whether:

I. substantial evidence supports the ALJ's finding that Plaintiff experienced medical improvement;

II. the ALJ properly discounted the opinion of Plaintiff's treating physician;

III. the ALJ erred by relying on the opinion of non-examining consultants;

IV. the hypothetical questions proposed to the vocational expert included all of Plaintiff's exertional and non-exertional limitations; and

V. the ALJ satisfied his duty to develop the record fully and completely.

## STANDARD OF REVIEW

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936 F. 2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F. 2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F. 3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Walden v.

Schweiker, 672 F. 2d 835, 838-39 (11th Cir. 1982). The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence. Dyer, 395 F. 3d at 1210. In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F. 2d at 1146.

## DISCUSSION AND CITATION TO AUTHORITY

I. **Substantial evidence supports the ALJ's finding that Plaintiff experienced substantial medical improvement.**

Plaintiff contends that the Social Security Administration failed to carry its burden of proving substantial medical improvement to the point of no disability. Plaintiff further contends that the ALJ erred in relying on erroneous statements of fact for his conclusion. (Doc. No. 11, p. 1). Plaintiff asserts that ALJ Foerster's description of his impairments, as found in the comparison point decision ("CPD"), differs from the CPD's actual finding of his impairments. Plaintiff contends that the ALJ based his findings of medical improvement almost entirely upon the findings of Dr. Steven J. Novack. Plaintiff further contends that, contrary to the ALJ's statement in his decision, Dr. Novack did not opine that Plaintiff could perform light or sedentary work. (Id. at 11). Plaintiff asserts that while Dr. Novack stated that he did not suspect cervical or lumbar radiculopathy, tests performed by Dr. Carl T. Shenkman demonstrated lumbar radiculopathy. (Id. at 11-12). Plaintiff contends that while the ALJ was supposed to compare the findings in the CPD with Plaintiff's condition in 2005 and thereafter, the ALJ instead simply recites the findings of Dr. Novack and does not show that there was substantial medical improvement between 2000 and 2005. (Id. at 12). Plaintiff asserts

AO 72A
(Rev. 8/82)

6

that Dr. Novack's "suspicions" cannot constitute substantial evidence because they are contradicted by objective medical testing in the record. (Id. at 13).

Defendant contends that substantial evidence supports the finding that Plaintiff experienced sufficient medical improvement. Defendant concedes that Plaintiff shows residual effects from prior acute problems, but asserts that other conditions are not as severe as they were in 2000. Defendant contends that while Plaintiff continues to display a foot drop, there is nothing in the record suggesting that he continues to experience severe motor loss. (Doc. No. 15, p. 14). Defendant further contends that there is also no evidence that Plaintiff continues to experience severe right arm limitations. (Id. at 15).

Medical improvement is defined as any decrease in the medical severity of a claimant's impairments which were present at the time of the most recent favorable decision that the claimant was disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on improvement in the symptoms, signs, and/or laboratory findings associated with the claimant's impairments. 20 C.F.R. § 404.1594(b)(1). For disability to end, the medical improvement must result in an increase in the claimant's ability to do basic work activities. 20 C.F.R. § 404.1594(b)(3).

Substantial evidence supports ALJ Foerster's findings that Plaintiff experienced medical improvement related to his ability to work and that his disability ended on April 1, 2005. Plaintiff's contention that there is a difference between ALJ Foerster's recount of the CPD's findings regarding his impairments and the CPD's actual findings is unavailing. The CPD found that Plaintiff had the impairments of residuals from prior

right knee reconstructive surgery for ACL tear; right leg compartment syndrome; right peroneal nerve palsy/paralysis with severe motor loss; right rotator cuff tear times two, status post reduction surgery; and degenerative disc disease of the lumbar spine with L4-5 loss of disc space heights and osteophytes. (Tr. at 57). In comparison, ALJ Foerster stated that the CPD found Plaintiff to have the impairments of a history of two surgeries on right arm; degenerative disc disease of the lumbar spine; and pain and limitations of right leg and knee. (Tr. at 19). While ALJ Foerster's recount may not be exact, it encompasses all of the CPD's findings regarding Plaintiff's impairments and the differences are unimportant.

Plaintiff's assertion that ALJ Foerster based his findings of medical improvement almost entirely upon the consultative examination of Dr. Novack is without merit. Medical improvement must be based on changes in the symptoms, signs, and/or laboratory findings associated with the claimant's impairments. 20 C.F.R. § 404.1594(b)(1). Symptoms are the claimant's own description of his impairments. 20 C.F.R. § 404.1528. In support of his finding of medical improvement, ALJ Foerster remarked that Plaintiff reported decreased back pain on a visit to Dr. Snow. (Tr. at 20). ALJ Foerster further remarked that Plaintiff testified that he only has to elevate his leg once a day for ten minutes. (Tr. at 21). This is in stark contrast to the CPD finding that Plaintiff was required to elevate his leg three times a day for up to forty minutes each time. ALJ Foerster observed that Plaintiff reported feeling much better after completing physical therapy. ALJ Foerster further observed that Plaintiff indicated his pain level was only a 2/10. (Tr. at 22). Signs are anatomical, physiological, or psychological abnormalities which can be observed. 20 C.F.R. § 404.1528. ALJ Foerster remarked

that Dr. Snow assessed Plaintiff's condition as good and that Dr. Novack opined that Plaintiff could perform light or sedentary work. ALJ Foerster further remarked that Dr. Snow's treatment notes do not reflect the degree of severity that he found in his medical assessment. (Tr. at 20). ALJ Foerster observed that Plaintiff's wrist, hand, and finger dexterity and grip strength were normal on the right upper extremity in a November 2004 examination. ALJ Foerster further observed that Plaintiff appears to ambulate very well with his ankle brace. (Tr. at 22).

Laboratory findings are anatomical, physiological, or psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques. 20 C.F.R. § 404.1528. The ALJ remarked that a musculoskeletal examination showed some limited range of motion of the right shoulder and edema in the right knee and ankle, but was otherwise unremarkable. (Tr. at 21). ALJ Foerster observed that a neurological exam of the cervical and lumbar region was unremarkable and lumbar radiculopathy was not suspected. The ALJ further observed that x-rays of the lumbar spine were negative, x-rays of the right knee showed only minor degenerative changes, and x-rays of the right shoulder showed only minor arthritic changes. (Tr. at 22). It is clear that there was substantial evidence supporting ALJ Foerster's finding of medical improvement that resulted in an increase in Plaintiff's ability to perform basic work activities based upon changes in Plaintiff's symptoms, signs, and laboratory findings associated with his impairment. See 20 C.F.R. § 404.1594(b)(3). Accordingly, Plaintiff's assertion that Dr. Novack's "suspicions" cannot constitute substantial evidence of medical improvement is without merit.

Plaintiff's contention that ALJ Foerster erred by relying on erroneous statements of fact is also unavailing. Plaintiff asserts that while the ALJ stated that "Dr. Novack concluded the claimant could perform light or sedentary work", Dr. Novack in fact stated, "Mr. Richard Campbell is not totally disabled from any and all types of work." (Doc. No. 11, p. 11). In Diorio v. Heckler, 721 F.2d 726 (11th Cir. 1983), the court found harmless error when the ALJ made erroneous statements of fact, but applied the proper legal standard. Id. at 728. Similarly, the court found in Jordan v. Astrue, 2008 WL 3200237 (M.D. Fla. 2008), that remand was not required when the ALJ misstated Plaintiff's symptoms because the outcome of the case would not be changed by a remand for the cited misstatements. Id. at *8. In the case sub judice, while Dr. Novack did not specifically find that Plaintiff could perform light or sedentary work as stated by ALJ Foerster, he did opine that Plaintiff was not totally disabled from any and all types of work, indicating that, at the very least, Plaintiff was able to perform sedentary work. The CPD determined that Plaintiff's residual functional capacity restricted him to sedentary work with the need to elevate his right leg three times per day for forty minutes each time. (Tr. at 58). The evidence of record establishes that Plaintiff is capable of performing work at the sedentary exertional level and is no longer restricted by the need to elevate his leg three times a day. Thus, remand is not necessary because ALJ Foerster's erroneous statements of fact were harmless error, as the jobs ALJ Foerster found Plaintiff capable of performing were all at the sedentary exertional level. See Jordan, 2008 WL 3200237 at *8.

## II. ALJ Foerster properly discounted the opinion of Plaintiff's treating physician.

Plaintiff asserts that Dr. Snow, his treating physician, completed a Medical Source Statement of Ability to do Work-Related Activities, in which he opined that Plaintiff could only occasionally lift and carry up to 10 pounds; had restricted motion of shoulder with loss of strength and grip; had frequent swelling of legs and feet; could only stand and walk two hours total in an eight hour workday; and could sit two hours in an eight hour workday. (Doc. No. 11, pp. 15-16). Plaintiff further asserts that those restrictions clearly prevent him from doing light or sedentary work. Plaintiff contends that while ALJ Foerster discounted Dr. Snow's opinion because he had not treated Plaintiff since February 2005, Dr. Shenkman's office notes demonstrate that Dr. Snow treated him after February 2005. (Id. at 16). Plaintiff asserts that Dr. Snow is in the best position to evaluate his overall functioning level because the doctor treated him for the longest period of time, he. (Id. at 16-17). Plaintiff contends that a finding that a treating source medical opinion is not supported by the evidence means only that the opinion is not entitled to controlling weight, not that the opinion should be rejected. Plaintiff further contends that treating source opinions are still entitled to deference. (Id. at 17-18) (citing SSR 96-2p). Defendant concedes that some medical reports continued to be sent to Dr. Snow after February 2005, but contends that ALJ Foerster's more substantial objection to Dr. Snow's opinion is that it was unsupported by the weight of the other evidence. (Doc. No. 15, pp. 16-17).

It is well-established that the opinion of a treating physician "must be given substantial or considerable weight unless good cause is shown to the contrary." Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004) (quoting Lewis v. Callahan, 125 F.3d

1436, 1440 (11th Cir. 1997)). "Good cause" exists when: (1) the treating physician's opinion is not supported by the record; (2) the record supports a finding inconsistent with the treating physician's opinion; or (3) the treating physician's opinion is conclusory or inconsistent with his own medical records. Id. at 1241. When the ALJ rejects the opinion of the treating physician, he must specify that he is doing so and must articulate a reason for not giving the opinion weight. MacGregor v. Bowen, 786 F. 2d 1050, 1053 (11th Cir. 1986). The ALJ must give "explicit and adequate" reasons for rejecting the opinion of a treating physician. Elam v. Railroad Retirement Board, 921 F.2d 1210, 1215 (11th Cir. 1991). The ALJ is required to "state with particularity the weight he gave different medical opinions and the reasons therefore." Sharfarz v. Bowen, 825 F. 2d 278, 279 (11th Cir. 1987).

While it appears that ALJ Foerster incorrectly stated that Dr. Snow did not treat Plaintiff after February 2005, the ALJ still had "good cause" to discount the doctor's opinion that Plaintiff was unable to work. See Phillips, 357 F. 3d at 1240. ALJ Foerster articulated an "explicit and adequate" reason for discounting Dr. Snow's opinion when he stated that the doctor's treatment notes did not reflect the degree of severity that he stated in his medical assessment. See Elam, 921 F.2d at 1215. ALJ Foerster observed that Plaintiff's condition was assessed as good and he reported decreased back pain in a 2004 visit. (Tr. at 20). ALJ Foerster further observed that Plaintiff showed some limited range of motion of the right shoulder and edema in the right knee and ankle in a musculoskeletal examination, but the examination was otherwise unremarkable. (Tr. at 21). Further, Dr. Snow's finding that Plaintiff needed a cane to ambulate (Tr. at 305) is contradicted by the finding that he was able to ambulate safely and was functional

without an assistive device. (Tr. at 22). Treatment notes from Plaintiff's orthopedist also indicate that he could walk with a normal gait. (Tr. at 265, 267, 269, 271, 273, 275, 277, 279, 281). Dr. Snow's findings that Plaintiff had impaired strength and grip in both hands and very little ability to use either arm (Tr. at 304, 306) is contradicted by the medical notes for 2005-2007. Dr. Snow also indicated that Plaintiff is right hand dominant, while Plaintiff testified that he is left handed. (Tr. at 306, 452). Accordingly, ALJ Foerster's decision to discount Dr. Snow's opinion is supported by substantial evidence and is based on the appropriate legal standards.

III. **ALJ Foerster did not err by incorporating the opinions of the State Agency consultants.**

Plaintiff contends that the ALJ erred in relying on the opinions of non-examining State Agency consultants because their opinions are not substantial evidence supporting his finding that Plaintiff was no longer disabled. (Doc. No. 11, p. 1). Plaintiff asserts that the State Agency consultants' opinions were the only medical opinions stating that he could perform light or sedentary work because Dr. Novack merely opined that he "is not totally disabled from any and all types of work." (Id. at 14) (citing Tr. at 242). Plaintiff further asserts that ALJ Foerster disregarded the opinion of his treating physician, Dr. Snow, and adopted the opinions of the State Agency consultants. Plaintiff contends that opinions of non-examining reviewing physicians are entitled to little weight and cannot constitute substantial evidence when they are contrary to the opinion of an examining physician. (Doc. No. 11, p. 14).

Defendant asserts that Plaintiff does not correctly describe the weight that may be accorded to the opinions of reviewing medical experts under appropriate circumstances. (Doc. No. 15, pp. 15-16). Defendant further asserts that the regulations

provide that the expert opinions of reviewing physicians constitute substantial evidence where, as here, they represent a reasonable reading of the relevant medical evidence. (Id. at 16) (citing 20 C.F.R. §§ 404.1527(f) & 416.927(f)). Defendant contends that an ALJ may rely on such opinions even when they are contrary to the opinion of a treating physician, so long as the ALJ has an adequate basis for doing so. (Doc. No. 15, p. 16) (citing Wainwright v. Comm'r of Soc. Sec. Admin., 2007 WL 708971 (11th Cir. 2007); Ogranaja v. Comm'r of Soc. Sec., 186 Fed. Appx. 848, 850-851 (11th Cir. 2006)). Defendant further contends that the opinions of the State Agency consultants were supported by the treatment records and the findings and opinions of Dr. Novack. (Doc. No. 15, p. 16).

An ALJ may assign great weight to the opinions of non-examining state agency physicians that are contrary to the opinions of a treating physician, provided the ALJ properly discounts the treating physician's opinions and the opinions of the state agency physicians are well supported and consistent with the record as a whole. Ogranaja v. Comm'r of Soc. Sec., 186 Fed. Appx. 848, 850-851 (11th Cir. 2006). Plaintiff's contention that the State Agency consultants were the only medical opinions finding that he was capable of performing light or sedentary exertional work is without merit. As discussed supra, Dr. Novack opined that Plaintiff was capable of performing at least sedentary work and the CPD found that he was able to perform sedentary work with the restriction of elevating his leg three times daily. Plaintiff's further contention that ALJ Foerster erred by relying on the opinions of non-examining consultants contrary to the opinions of Dr. Snow is also without merit. There was no error because ALJ Foerster properly discounted the opinion of Dr. Snow and made the finding that the State Agency

consultants' opinions were well supported and consistent with the record as a whole. See Ogranaja, 186 Fed. Appx. at 850-851. Further, ALJ Foerster did not rely solely on the opinions of the State Agency consultants, as alleged by Plaintiff, as he also relied on the opinions of Dr. Novack and the other evidence of record.

### IV. The ALJ posed an appropriate hypothetical question to the vocational expert.

Plaintiff contends that the ALJ's hypothetical questions to the vocational expert failed to include all of his exertional and non-exertional impairments, thus the vocational expert's responses cannot constitute substantial evidence to support the ALJ's finding that he is no longer disabled. (Doc. No. 11, p. 1). Plaintiff notes that the ALJ propounded three hypothetical questions to the vocational expert. Plaintiff asserts that the second hypothetical was consistent with the functional limitations found by Dr. Snow and the vocational expert testified that there were no jobs that such an individual could do. Plaintiff further asserts that the first hypothetical was clearly contrary to Dr. Snow's findings. (Id. at 19). Plaintiff contends that the ALJ does not indicate where the limitations in hypothetical questions one and three came from. Plaintiff further contends that the limitations are not based on Dr. Novack's report. Plaintiff asserts that the ALJ presumably got the functional limitations for those hypothetical questions from the opinions of the State Agency consultants. (Id. at 20). Plaintiff further asserts that the reports of reviewing non-examining physicians do not constitute substantial evidence upon which to base an administrative decision. (Id.) (citing Lamb v. Bowen, 847 F.2d 698 (11th Cir. 1988)). Plaintiff contends that responses to hypothetical questions which presume matters outside the record cannot constitute substantial evidence upon which to predicate a disability decision. (Id.) (citing Western v. Harris, 633 F.2d 993 (5th Cir.

1981)). Plaintiff further contends that a hypothetical question must include a claimant's subjective symptoms and cannot be incomplete. (Doc. No. 11, p. 21) (citing Vega v. Comm'r, 265 F.3d 1214 (11th Cir. 2001)). Plaintiff asserts that a surveillance system monitor is classified as a job requiring a reasoning level of three and his special education background and inability to retain what he reads is inconsistent with such a job. (Doc. No. 11, p. 21).

Defendant asserts that Plaintiff worked as a forklift operator for three years, which is classified as a SVP level three job. Defendant further asserts that none of the jobs identified by the vocational expert involve a mental capacity level beyond that previously demonstrated by Plaintiff. (Doc. No. 15, p. 18). Defendant contends that the primary hypothetical posed to the vocational expert was consistent with the opinions of the reviewing physicians and with the less specific opinion of Dr. Novack. Defendant further contends that there is no real evidence that Plaintiff could not handle the mental demands of a surveillance system monitor, but even if this were true, the vocational expert identified two additional unskilled occupations which were consistent with Plaintiff's demonstrated intellectual capacity. (Id. at 19). Defendant asserts that the ALJ was not obliged to accept vocational expert testimony that assumes a more severe degree of limitation than the record warranted. (Id. at 20) (citing Graham v. Bowen, 790 F.2d 1572, 1576 (11th Cir. 1986)).

Through the use of vocational expert testimony, the ALJ must articulate specific jobs which the plaintiff is able to perform. Cowart v. Schweiker, 662 F.2d 731, 736 (11th Cir. 1981). The hypothetical questions which the ALJ poses to the vocational expert must comprehensively describe the claimant's impairments. Jones v. Apfel, 190 F.3d

1224, 1229 (11th Cir. 1999). However, the hypothetical need only include the impairments which the ALJ accepts as true. McKay v. Apfel, 1999 WL 1335578, *7 (M.D. Ala. Dec. 9, 1999) (citing Haynes v. Shalala, 26 F.3d 812, 815 (8th Cir. 1994)).

ALJ Foerster cited the vocational expert's response to his first hypothetical question. In that hypothetical, ALJ Foerster included a residual functional capacity that included the ability to lift and carry ten pounds; unlimited ability to sit; ability to stand and walk at least two hours out of an eight hour workday; limited ability to reach overhead with the right arm; unlimited ability to reach overhead with dominant left arm; and fully able to handle, finger, feel, and grasp with both hands. (Tr. at 429). The vocational expert testified that such a person would be able to find employment as a weaver defect clerk, carding machine operator, and surveillance system monitor. (Tr. at 430).

There is substantial evidence supporting ALJ Foerster's findings regarding the hypothetical limitations, as they are consistent with the opinions of Dr. Novack and the State Agency consultants. Plaintiff's reliance on Lamb is misplaced because in that case, it was noted that the opinions of non-examining reviewing physicians are entitled to little weight when contrary to the accepted opinions of examining physicians and standing alone do not constitute substantial evidence. Lamb, 847 F.2d at 703 (citing Sharfarz, 825 F.2d at 280). In contrast, ALJ Foerster properly discounted the treating physician's opinion and the opinions of the State Agency consultants did not stand alone. The State Agency consultants' opinions were well supported and consistent with the record, as well as Dr. Novack's opinions. Plaintiff properly asserts that a hypothetical question to a vocational expert must be complete and include a claimant's subjective symptoms, however, the hypothetical need only include the impairments

which the ALJ accepts as true. See McKay, 1999 WL 1335578 at *7. Accordingly, the vocational expert testimony adequately showed that Plaintiff was able to perform substantial gainful activity.

**V.    The ALJ fulfilled his duty to fully and completely develop the record.**

Plaintiff contends that the ALJ failed to develop the record fully and completely. Plaintiff notes that he testified that he burned his left hand and as a consequence he has difficulty picking things up with that hand and can only lift five to ten pounds. Plaintiff asserts that the ALJ refused to order copies of his burn treatment records because he did not think it was an issue. Plaintiff notes that he testified that he was in special education at school, that he does not retain what he reads, and has difficulty in doing simple arithmetic calculations. (Doc. No. 11, p. 22). Plaintiff contends that his intelligence level was clearly relevant to the vocational testimony and ALJ Foerster refused to order a psychological evaluation. Plaintiff asserts that because his mental capacity and the effects of his burn injury were clearly relevant issues, the ALJ failed his duty to develop the record fully and completely. (Id. at 23).

Defendant contends that while the ALJ did not request Plaintiff's records pertaining to his burn injury, he did not foreclose Plaintiff's submission of those records. Defendant further contends that Plaintiff testified at the supplemental hearing that he regained the ability to use his burned hand. Defendant asserts that Plaintiff worked as a forklift operator, which is classified as requiring a SVP level of three. Defendant further asserts that none of the jobs identified by the vocational expert require a mental capacity beyond that previously demonstrated by Plaintiff. Defendant contends that

there is no real evidence of any mental incapacity of such magnitude that it would require a consultative psychological evaluation. (Doc. No. 15, p. 18).

"It is well established that the ALJ has a basic duty to develop a full and fair record." Wind v. Barnhart, 133 Fed. Appx. 684, 693 (11th Cir. 2005) (citing Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003)). "[I]t is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary to make an informed decision." Reeves v. Heckler, 734 F.2d 519, 522 n. 1 (11th Cir.1984). "An ALJ, however, is not required to seek additional independent expert medical testimony before making a disability determination if the record is sufficient and additional expert testimony is unnecessary." Wind, 133 Fed. Appx. at 693.

ALJ Foerster did not err by failing to obtain the treatment records for Plaintiff's burn or order a psychological consultative evaluation. With regard to Plaintiff's alleged impairments due to the burns on his left hand, he testified that he had regained the ability to use his left hand and that his problems were mostly on his right side. (Tr. at 425). As such, it was not necessary for the ALJ to acquire the treatment notes concerning Plaintiff's burn injury. Plaintiff's contention that ALJ Foerster erred by failing to order a psychological evaluation is also without merit. The ALJ is not required to obtain independent expert medical testimony where, as here, the record is sufficient to render a decision. See Wind, 133 Fed. Appx. at 693. None of the jobs identified by ALJ involve a mental capacity level beyond that previously demonstrated by Plaintiff, who worked for three years as a forklift operator, a job that requires a reasoning level of three. Thus, obtaining a consultative examination was unnecessary, and ALJ Foerster did not err in failing to do so.

## CONCLUSION

Based on the foregoing reasons, it is my **RECOMMENDATION** that the decision of the Commissioner be **AFFIRMED**.

So **REPORTED** and **RECOMMENDED**, this 12th day of June, 2009.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE